
# IN THE SUPREME COURT OF GUAM

**PEOPLE OF GUAM,**
Plaintiff-Appellee,

**v.**

**VIANNEY NENNIS HOSEI,**
Defendant-Appellant.

Supreme Court Case No. CRA21-014
Superior Court Case No. CF0080-19

## OPINION

### Cite as: 2023 Guam 22

Appeal from the Superior Court of Guam
Argued and submitted on April 24, 2023
Hagåtña, Guam

Appearing for Defendant-Appellant:
F. Randall Cunliffe, *Esq.*
Cunliffe & Cook
A Professional Corporation
210 Archbishop Flores St., Ste. 200
Hagåtña, GU 96910

Appearing for Plaintiff-Appellee:
Jordan Lawrence Pauluhn, *Esq.* (briefed)
Christine S. Tenorio, *Esq.* (argued)
Assistant Attorneys General
Office of the Attorney General
590 S. Marine Corps Dr., Ste. 802
Tamuning, GU 96913


**E-Received**
12/27/2023 3:33:14 PM

BEFORE: ROBERT J. TORRES, Chief Justice; F. PHILIP CARBULLIDO, Associate Justice; and KATHERINE A. MARAMAN, Associate Justice.

**MARAMAN, J.:**

[1]　　This is an appeal from a jury verdict convicting Defendant-Appellant Vianney Nennis Hosei of one count of First Degree Criminal Sexual Conduct ("CSC I") and one count of Third Degree Criminal Sexual Conduct ("CSC III"). Hosei's CSC I conviction is for being aided or abetted by others in committing penile penetration against a person who was physically helpless, in violation of 9 GCA § 25.15(a)(4).[1] His CSC III conviction is for digitally penetrating a physically helpless person in violation of 9 GCA § 25.25(a)(3).

[2]　　Hosei, along with two co-defendants, was prosecuted for the sexual assault of a minor captured on a cell phone recording. This court issued a decision affirming the sentence of one of Hosei's co-defendants in *People v. Piyelit*, 2022 Guam 16. Hosei's appeal raises four issues: the propriety of a consent jury instruction; alleged prosecutorial "vouching"; sufficiency of the evidence; and the correctness of an aiding and abetting instruction.

[3]　　We affirm in part and reverse in part because the aiding and abetting instruction was plain error.

## I.　FACTUAL AND PROCEDURAL BACKGROUND

[4]　　S.K. was sixteen years old on the weekend of November 4, 2018, when she received a message from Dwayne Piyelit inviting her to come drink at his friend's house. At the time of the invitation, Hosei, Piyelit, Burton Borja, and another friend were multiple twelve-packs into the

---

[1] In 2022, the definition of "physically helpless" was amended to include "unable to withhold consent or to withdraw consent because of a physical condition." 9 GCA § 25.10(a)(7)(C) (as amended by Guam Pub. L. 36-101:2 (June 15, 2022)). This change, which also affected sections 25.15 and 25.25, was part of a larger overhaul of Guam's CSC laws that was acknowledged by the Legislature to address the prevailing standards which were restricted to "only the most extreme cases of inability or incapacitation." B. No. 243-36 (LS) at 2. As sections 25.10, 25.15, and 25.25 were amended to address the type of factual circumstances raised by this case, our decision is limited to cases that arose before this amendment.

night at the Borja home in Mangilao. Piyelit accompanied Borja and a friend to pick S.K. up from her home. On the return trip to Mangilao, they stopped at the Sinajana Mobil where, despite everyone being under twenty-one, Borja purchased two twelve-packs of Budweiser beer and a bottle of McCormick vodka.

[5]     At some point, Piyelit instructed S.K. to introduce herself as being eighteen years old. When S.K. arrived at the Borja family home, Piyelit introduced her to Hosei, after rousing him from an alcohol-induced sleep. Piyelit then brought S.K. a chair and mixed her a Vodka & Coke in an empty beer can as they sat drinking around a table in the front yard.

[6]     One witness estimated that S.K. consumed about eight ounces of vodka during the night. Transcript ("Tr.") at 161 (Jury Trial, Apr. 7, 2021) (Borja testifying to S.K. drinking half of a sixteen-ounce bottle). As the evening progressed, it began to rain, and the drinking moved to the garage. S.K. remembered standing up and feeling dizzy because her vision started getting blurry. Her last clear memory was feeling dizzy and telling Piyelit she needed to use the restroom, followed by "popping a squat" in the backyard.

[7]     S.K.'s memory of the rest of the night is essentially non-existent, except for a hazy sequence in a bathroom where, she testified, "I went to pee and my vagina was burning and then I showered . . . . I was wearing Dwayne's shirt. . . . I remember I was making out with him in Burton's restroom. I was sitting on top of the sink." Tr. at 26 (Jury Trial Day 4, Apr. 8, 2021). The next thing she could remember was being dropped off at home at 8:00 a.m. the next day.

[8]     Nearly two months later, S.K. learned that Hosei, Piyelit, and Borja had had sex with her that night when a graphic video of the incident was sent to her on Facebook. She testified, "I was shocked. . . . I don't remember. I don't even remember. . . . I was in shock. I didn't believe that that could be me." *Id.* at 28-29, 31-32.

[9]     The video, which lasts one minute and forty-three seconds, depicts Hosei engaged in vaginal intercourse with S.K. while Piyelit engaged in fellatio with her.  At trial, Hosei admitted that S.K. had her eyes closed during the entire video.  Tr. at 43 (Jury Trial Day 5, Apr. 9, 2021).  At the 1:09 mark of the video, the fingers of Borja and Hosei are shown in S.K.'s vagina.  Tr. at 46 (Jury Trial, Apr. 7, 2021).  Borja is then shown putting his fingers in S.K.'s mouth, to which she did not respond.  Tr. at 42-43 (Jury Trial Day 5).  The video concludes with Piyelit stating, "Dude, I feel like a rapist," to which Borja replies, "You know she wanted this.  She wanted this, dog."  Tr. at 125-130 (Jury Trial, Apr. 7, 2021).

[10]    There is conflicting testimony about what occurred on the night of the assault, with Piyelit and Borja testifying against Hosei, and Hosei testifying on his own behalf.

[11]    Piyelit testified that everyone consumed alcohol during the party.  Piyelit testified that sometime during the party before the video was recorded, he and S.K. spent time alone.  When his friends asked what happened, Piyelit told them he had sex with S.K.  Piyelit testified that he and S.K. did not actually have sex, but he lied to his friends because he wanted to brag.  Piyelit testified that during the evening, Borja brought S.K. into Borja's bedroom.  Piyelit claimed that he and Hosei carried another friend, who was passed out from drinking, to Borja's room and walked in on Borja and S.K. having sex.  Piyelit and Hosei placed their friend on a spare mattress in the bedroom and then "joined in."  *Id.* at 119-20.  Piyelit did not recall whose idea it was to film the incident but maintained the video was filmed on Borja's phone.  Piyelit testified that the video began five seconds after he and Hosei "joined in."  *Id.* at 122.  Piyelit testified that he did not ask for, or receive, verbal consent from S.K., and he could not recall whether S.K. was intoxicated.  The People played the recorded video at trial, and Piyelit confirmed he was depicted in the video participating in sexual acts with S.K.

[12]    Borja testified that during the party, he observed Piyelit and S.K. having sex outside of his residence.  Borja stated that he and Hosei were jealous that Piyelit had sex with S.K., so he asked Piyelit when it would be "[his] turn" to have sex with her.  *Id.* at 160.  Borja testified that Piyelit spoke to S.K. on the side, and then S.K. approached Borja, and they went to his room to have sex.  Borja testified he could not have sex with S.K. because he was too intoxicated, and after he unsuccessfully tried a second time, he unlocked his bedroom door, and Hosei and Piyelit entered.  Borja stated that he, Piyelit, and Hosei had sex with S.K. and that he recorded the video at the direction of Piyelit.  Borja testified that S.K. never consented to having sex with any of them.  He believed S.K. was too drunk to give consent and described her as "out of it."  *Id.* at 170.

[13]    Hosei testified that Piyelit introduced S.K. to him as Piyelit's eighteen-year-old cousin that attended GCC.  He claimed that S.K. started to "open up and be more friendly, and eventually got pretty flirtatious."  Tr. at 19 (Jury Trial Day 5).  Hosei testified that S.K. and Piyelit "slipped away" and that when they came back, Piyelit "was bragging about having sex with her."  *Id.* at 20.  Hosei stated, "I guess Burton wanted in on the action as well, so he extended his hand, she took his hand and -- escorted [S.K.] to the bedroom."  *Id.*  Hosei claims he and Piyelit then decided to "mess" with Borja, so they went upstairs and started banging on Borja's bedroom door.  *Id.* at 20-21.  Apparently, they soon tired of their antics and returned downstairs to find their friend passed out in a chair.  Hosei stated that they intended to help the friend upstairs to a spare mattress in Borja's bedroom; when they arrived upstairs, the door was open, S.K. was lying naked on Borja's bed, and Borja was having sex with her.  Hosei testified that he and Piyelit then "switched off" with Borja and began having sex with S.K.  *Id.* at 22.  Hosei claims he was having sex with S.K. for about one to two minutes before the video started.  Hosei testified that S.K. was not passed out, that she looked at him, and that she did not indicate that she did not want to have sex with him.  Hosei did

not deny inserting his penis and finger into S.K.'s vagina, but he believed he had consent because "she looked at me, she saw who I was, and she saw what I was doing and she moaned," *id.* at 40.

[14]     Hosei was indicted by a grand jury on two counts of First Degree Criminal Sexual Conduct. Both counts alleged that Hosei was "aided or abetted by one or more other persons" and "kn[ew] or ha[d] reason to know that the victim was mentally defective, mentally incapacitated or physically helpless or the actor used force or coercion to accomplish the sexual penetration." Record on Appeal ("RA"), tab 14 at 2 (Indictment, Feb. 26, 2019). Piyelit and Borja were also charged and indicted—pleading guilty and testifying against Hosei. At the close of the People's case, they moved to amend the indictment so that both counts specifically alleged that Hosei was "aided or abetted by one or more other persons" and "kn[ew] or ha[d] reason to know that the victim was physically helpless." Tr. at 88-89 (Jury Trial Day 4); RA, tab 142 (Am. Indictment, Apr. 8, 2021). Hosei did not object. RA, tab 137 (Min. Entry, Apr. 8, 2021). CSC III was included as a lesser-included offense of both counts, with the only difference being a lack of the "aided or abetted" element.

[15]     At trial, the People proceeded under a theory that, before the sexual acts, S.K. drank alcohol to the point where she was physically unable to communicate an unwillingness to the act. To establish this, the People presented the video, testimony from Borja and Piyelit that S.K. had been drinking, and testimony from S.K. that she had no recollection of the sexual acts. According to the People, S.K.'s actions in the video and the actions of Hosei and his co-defendants established that Hosei knew or had reason to know that S.K. was physically helpless. Hosei proceeded under a theory that S.K. gave consent through her actions, arguing that because the video showed that she put her hand on Piyelit's penis, it established that she was not physically helpless.

**[16]**     Hosei moved for a judgment of acquittal at the close of the People's case and after the defense rested, which were both denied. After denying reconsideration of the motion for acquittal, the trial court turned to Hosei's objection to one of the People's proposed jury instructions entitled "consent is not a defense." The proposed instruction read:

> Consent is not a defense to a charge of criminal sexual conduct based on a theory that the victim was physically helpless. The consent defense is not available for a charge pursuant to a theory of physically helpless because consent requires "a willing, noncoerced act of sexual intimacy or intercourse between persons of sufficient age who are neither 'mentally deficient,' 'mentally incapacitated,' nor 'physically helpless.'" Consent requires that a person agree to a sexual act freely and willingly, whereas a person is physically helpless when the person is "physically unable to communicate unwillingness to an act." Consent cannot exist where a person meets the definition of being physically helpless because, by definition, such a person is not able to willingly agree to a sexual act. A person who is physically helpless is unable to consent.

RA, tab 136 at 2 (People's Proposed Suppl. Jury Instrs., Apr. 8, 2021).

**[17]**     Hosei's trial counsel objected to the proposed instruction, stating it was "an appeal waiting to happen." Tr. at 63 (Jury Trial Day 5). Hosei's counsel then proposed several edits to the instruction, which the prosecution opposed, before both counsels accepted changes suggested by the court. As agreed, Instruction 6J was entitled "Consent" and stated:

> Consent requires that a person agree to a sexual act freely and willingly, whereas a person is physically helpless when the person is "physically unable to communicate an unwillingness to an act."
>
> It is up to you to decide if the victim was physically helpless so that she was unable to communicate unwillingness to an act. Consent cannot exist where a person meets the definition of being physically helpless because, by definition, such a person is not able to willingly agree to a sexual act. A person who is physically helpless is unable to consent.

RA, tab 150 at 45 (Jury Instrs., Apr. 13, 2021).

**[18]**     The prosecution also sought an instruction that defined "aiding and abetting," proposing a model jury instruction from Michigan, the jurisdiction that is the source of Guam's CSC laws.

Hosei's trial counsel felt that a definition was unnecessary. He asked to hear what Guam's aiding and abetting statute was, to which the prosecution replied that it was section 4.60, but that it contained no definition. The court stated it was inclined to include the instruction because it was the difference between CSC I and CSC III, to which Hosei's trial counsel responded, "All right. I'll agree." Tr. at 73 (Jury Trial Day 5).

[19]     Following two days of deliberation, the jury found Hosei guilty of (1) one count of CSC I for being aided or abetted in causing his penis to enter the genital opening of S.K. and (2) one count of CSC III, as a lesser-included offense, for causing his finger to enter the genital opening of S.K. Hosei was sentenced to fifteen years of imprisonment for CSC I and six years for CSC III, to run concurrently. He timely appealed.

## II. JURISDICTION

[20]     This court has jurisdiction to hear appeals from final judgments of the Superior Court. 48 U.S.C.A. § 1424-1(a)(2) (Westlaw current through Pub. L. 118-23 (2023)); 7 GCA §§ 3107, 3108(a) (2005); 8 GCA §§ 130.10, 130.15(a) (2005).

## III. STANDARD OF REVIEW

[21]     When a party fails to object to a jury instruction, the court reviews for plain error. *People v. Felder*, 2012 Guam 8 ¶ 8. Alleged improper vouching by the prosecution is reviewed for plain error when not objected to. *People v. Moses*, 2007 Guam 5 ¶¶ 5, 8. When a defendant raises a sufficiency-of-the-evidence argument by a motion for judgment of acquittal, we review denial of that motion *de novo*. *People v. Song*, 2021 Guam 14 ¶ 16. "We review the record to determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt." *People v. Robert*, 2019 Guam 2 ¶ 8 (citations omitted). The People "must be afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn

therefrom." *People v. Song*, 2012 Guam 21 ¶ 28 (citation omitted). "This standard is highly deferential to the jury's verdict and not deferential to the trial court's decision to deny the motion for a judgment of acquittal." *People v. Jesus*, 2009 Guam 2 ¶ 19 (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

## IV.  ANALYSIS

### A.  Hosei Has Not Shown the Jury Instruction on Consent Was Plain Error

#### 1.  Although the challenged jury instruction was agreed upon by Hosei's trial counsel, application of the invited error doctrine is inappropriate

[22]    The People argue that appellate review of the consent jury instruction is barred by the doctrine of invited error because it was agreed upon by Hosei's trial counsel. Appellee's Br. at 16-17 (Feb. 2, 2023). The invited error doctrine was developed to "prevent parties from acting in bad faith by intentionally introducing errors at the trial level to form a basis for appeal if the judgment was unfavorable." *E.g.*, Anne Warren Orcutt, *Cessante Ratione Legis Cessat Ipsa Lex: Arguing for a Narrow Application of the Invited Error Doctrine in Arizona*, 42 Ariz. St. L.J. 491 (2010). We have recognized that the invited error doctrine "may preclude a party from raising certain issues on appeal." *Piyelit*, 2022 Guam 16 ¶ 21.

[23]    Federal circuits are split on the issue of "whether an 'invited error' in a jury instruction is a 'waiver' that precludes appellate review, or merely a 'forfeiture' that permits review for plain error." *United States v. Mariano*, 729 F.3d 874, 880-81 (8th Cir. 2013) (citing *United States v. Olano*, 507 U.S. 725 (1993)). We have cited with approval the Ninth Circuit formulation of the invited error doctrine that applies only to those rights considered waived, rather than forfeited. *Piyelit*, 2022 Guam 16 ¶ 21 (citing *United States v. Perez*, 116 F.3d 840, 842 (9th Cir. 1997)). This court has observed that use of the doctrine cannot be "based upon a defendant's silence on an

issue; rather, for the doctrine to apply, a defendant 'must affirmatively invite the error.'" *People v. Ramey*, 2019 Guam 11 ¶ 13 (quoting *People v. Finik*, 2017 Guam 21 ¶ 42).

[24]     As for the consent instruction, the People argue for their characterization of the Eighth Circuit's position, which they claim is that "[w]hen a party expressly agrees to a jury instruction, he or she waives any objection and the court does not review the objection at all.'" Appellee's Br. at 15 (citing *United States v. Spencer*, 998 F.3d 813, 818 (8th Cir. 2021)). The People also advocate—without analysis—that this court should adopt the Eleventh Circuit's harsh formulation of the doctrine. *Id.* at 16 ("[W]hen a party agrees with a court's proposed instructions, the doctrine of invited error applies, meaning that review is waived even if plain error would result." (alteration in original) (quoting *United States v. Frank*, 599 F.3d 1221, 1240 (11th Cir. 2010))).

[25]     The Eleventh Circuit approach to invited error has been harshly criticized as "subjugat[ing] the interests of justice to the demands of a procedural mechanism." Sean Arthurs, *A Foolish Consistency: How Refusing to Review Ford v. Garcia's Invited Error Demonstrates the Eleventh Circuit's Prioritization of Procedure over Justice*, 72 U. Cin. L. Rev. 1707, 1722 (2004). The Eleventh Circuit also refuses to recognize an exception to the doctrine: "Of the seven circuits that have considered the creation of an exception to the invited error doctrine, six have decided that the interests of justice warrant such an exception . . . ." *Id.*

[26]     We find it inappropriate to apply the invited error doctrine to the jury instruction on consent in this case. A leading treatise observes that:

> In the context of jury instructions, there is no bright-line rule for application of the invited error doctrine; rather, to determine whether the doctrine bars consideration of the alleged instructional error, appellate courts must carefully examine the complaining party's actions that allegedly induced the court to make the claimed error and the context in which those actions occurred.

24 C.J.S. *Criminal Procedure and Rights of Accused* § 2548 (Nov. 2023 Update).

[27]     A careful examination of the actions of Hosei's public defender regarding the consent instruction does not reveal the bad faith that the invited error doctrine was developed to combat. Hosei's trial counsel initially objected to the People's proposed "consent is not a defense" instruction because he felt it was "an appeal waiting to happen." Tr. at 63 (Jury Trial Day 5). Even if the instruction eventually proposed by the trial court was erroneous, Hosei's acquiescence was not invited error. In *United States v. Alferahin*, the Ninth Circuit faced a similar problem where defense counsel agreed to an instruction proposed by the district court under a misapprehension of the law. 433 F.3d 1148, 1154 n.2 (9th Cir. 2006). That court determined that because "Alferahin's attorney explicitly stated that he considered the judge's erroneous instructions 'complete and accurate as far as what the government has to prove in the case,'" it was "impossible" to say he "knowingly and intentionally abandoned a known right." *Id.*

[28]     In *Piyelit*, we indicated the persuasive value we have placed on the Ninth Circuit's formulation of the invited error doctrine, *see* 2022 Guam 16 ¶ 21, which allows review of an invited error under the "plain error" standard, *Perez*, 116 F.3d at 844. This is significant here because both parties agree that we should review an unobjected-to jury instruction for plain error. Although we are inclined to apply the Ninth Circuit's invited error jurisprudence in the appropriate case, application of the invited error doctrine here will not change the outcome. *See Hemlani v. Hemlani*, 2015 Guam 16 ¶ 33 ("As a general appellate principle, a court will not address issues unnecessary to the resolution of the case before it."). Thus, we decline to invoke the invited error doctrine, and we reach the merits of Hosei's argument.

### 2. Hosei fails to meet his burden on appeal to show plain error

[29]     When there are no objections to a jury instruction, this court reviews for plain error. *People v. Gargarita*, 2015 Guam 28 ¶ 11. To prevail, a party arguing plain error on appeal must show:

"(1) there was an error; (2) the error is clear or obvious under current law; (3) the error affected substantial rights; and (4) reversal is necessary to prevent a miscarriage of justice or to maintain the integrity of the judicial process." *Piyelit*, 2022 Guam 16 ¶ 18 (quoting *People v. Quitugua*, 2009 Guam 10 ¶ 11).

### a. The consent instruction may have been erroneous

[30]    Hosei devotes much of his brief on this issue to arguing that the consent instruction was erroneous. Appellant's Br. at 11 (May 16, 2022) ("This is an erroneous instruction as consent is not a defense and Hosei could not get an instruction for such a defense.").

[31]    The law at the time stated: "*Physically Helpless* means that a person is unconscious, asleep or for any other reason is physically unable to communicate unwillingness to an act." 9 GCA § 25.10(a)(6) (2005). Most sources treat "unable to communicate unwillingness to an act" as being synonymous with "unable to communicate nonconsent." Wayne R. LaFave, 2 Subst. Crim. L. § 17.4(b) Incapacity (3d ed. (Oct. 2023 Update)). Notably, Michigan courts have found that consent can be relevant to negating the element of physical helplessness. *People v. Sutton*, No. 234680, 2002 WL 31928562, at *2 (Mich. Ct. App. Nov. 12, 2002) (per curiam) (unpublished) ("Consent during the incident was relevant only inasmuch as the victim's ability to indicate consent shows that she was not 'physically helpless' . . . ."); *People v. Moench*, No. 347086, 2020 WL 2790196, at *2 (Mich. Ct. App. May 28, 2020) (per curiam) (unpublished) ("If the jury believed defendant's testimony that the victim consented, then it necessarily would have determined that the victim was awake and not physically helpless.").[2] Therefore, Hosei is incorrect that because he "could not get

---

[2] We recently emphasized in *People v. Penaflorida* that because Guam's CSC statutes are based on Michigan's, this court should look first to Michigan cases to aid in interpretation. 2022 Guam 14 ¶ 14. Although a majority of Michigan Court of Appeals decisions are unpublished, *see* 2019 Michigan Appellate Bench Bar Conference Summary Report at 171 (discussing a need for more published opinions from the Michigan Court of Appeals, noting "the ratio of published to unpublished opinions . . . is approximately ten to one"), we rely on unpublished opinions to the extent their reasoned analysis is persuasive in the case before us.

an instruction for such a defense," the word "consent" should have been omitted from the jury instructions altogether. *See* Appellant's Br. at 11; *see also People v. Guajardo*, No. 333012, 2017 WL 3043842, at *3 (Mich. Ct. App. July 18, 2017) (per curiam) (unpublished) ("[D]efense counsel successfully argued that a consent instruction should be given to the jury. . . . [Defense counsel] understood the prosecution's theory of the case and believed that offering evidence of consent would necessarily negate the theory that the victim was physically helpless . . . .'").

[32]     Hosei tacitly acknowledges that this court's opinion in *People v. Reyes*, 2020 Guam 33, undermines his argument. *See* Appellant's Reply Br. at 1 (Mar. 2, 2023). In that case, the court stated:

> To establish that J.W. was "physically helpless,". . . the prosecutor had to offer evidence to demonstrate that J.W. was "unconscious, asleep[,] or for any other reason [was] physically unable to communicate unwillingness to an act," i.e., sexual contact or intercourse. Because the case hinged on this element and *whether J.W. was too intoxicated to communicate a willingness to have sex*, questions over her demeanor and whether she was "*too drunk to consent*" were proper. The prosecutor's questions of whether J.W. could have had consensual sex with any other person helped to establish if J.W. was in a state where she could not consent to any sexual contact with Reyes. Additionally, the prosecutor's questions did not call for Reyes to speculate as to J.W.'s physical state and ability to consent, but to give his personal observations of J.W.'s demeanor and assessment if she was "too drunk to consent to sex." For these reasons, the trial court did not abuse its discretion in allowing the prosecutor to question Reyes on consent under the circumstances.

*Reyes*, 2020 Guam 33 ¶ 73 (emphases added) (internal citations omitted). Hosei asserts in his reply brief that "this court in *Reyes* misstated the element [of physical helplessness]." Reply Br. at 1. But we correctly stated the element was that the victim "is physically unable to communicate unwillingness to an act." *Reyes*, 2020 Guam 33 ¶ 73 (citation omitted).

[33]     Hosei argues semantics in saying there is a difference between being "physically unable to communicate *unwillingness* to an act" and being "too intoxicated to communicate a *willingness*." The *Reyes* decision placed an emphasis on whether the victim is physically unable to

communicate—if they are so intoxicated that they cannot communicate *unwillingness* they are just as unable to communicate *willingness*.  *See* 2020 Guam 33 ¶ 73.

[34]    We observe that others have critiqued the law in effect at the time of Hosei's trial because, "[r]elying on a standard like 'unconscious' or 'physically unable to communicate lack of consent' creates unnecessary ambiguity."  Model Penal Code - Sex. Assault & Related Offenses Section 213.3 TD No 5 at 151 (2021).  Better practice may have been to omit discussion of consent in the instruction and instead focus on the definition of physical helplessness to avoid unnecessary ambiguity.  *Cf. People v. Lessard*, 2019 Guam 10 ¶¶ 10-11 ("[I]t may be better practice to avoid the instruction altogether . . . .  [T]he instruction will often confuse rather than clarify the burdens in a criminal prosecution.").  Nonetheless, the instruction challenged by Hosei correctly articulated the definition of physical helplessness.  We doubt whether the surplusage of the instruction discussing consent was even erroneous.  *See United States v. Moore*, 917 F.2d 215, 228 (6th Cir. 1990) ("[T]he jury . . . was merely educated on the definitions of other applicable terms.  There were no extraneous elements presented to the jury and therefore the district court committed no reversible error."); *People v. Mejia*, 149 Cal. Rptr. 3d 815, 857 (Ct. App. 2012) ("Although the instruction as read contained this surplus definition, . . . it was a definition without a purpose and we are convinced that any rational jury would have simply disregarded it.").  But we need not decide whether the trial court erred.  Even assuming it did, Hosei fails to satisfy the other prongs of plain error analysis.

### b.  Hosei makes none of the required showings under the plain error standard

[35]    Beyond arguing that the instruction on consent was wrong, Hosei does not attempt to show that it was plain error that requires reversal.  Hosei has the burden of establishing the alleged error was clear or obvious under current law.  *People v. White*, 2020 Guam 19 ¶ 8.  However, Hosei

cites no cases in his opening brief beyond a mere recitation of the plain error standard. In his reply brief, he argues that *Reyes* misstates the law, but this cuts against any finding the error was clear or obvious under current law. *See, e.g.*, *People v. Cross*, 147 N.E.3d 962, 986 (Ill. App. 2019) ("[W]hether or not our precedent was wrongly decided, the error is not a good candidate for 'clear or obvious' error when the applicable precedent goes the other way."). Hosei makes no showing that the alleged error was clear or obvious under current law.

[36]     Hosei also "has the burden of showing the error affected his substantial rights, meaning the error was prejudicial and affected the outcome of his case." *People v. Moses*, 2022 Guam 17 ¶ 64. He fails to show how the instruction's discussion of consent was prejudicial, or how omitting that discussion would have led to a different outcome of his case. And he fails to show that reversal is necessary to prevent a miscarriage of justice or maintain the integrity of the judicial system.

[37]     Hosei has failed to meet his burden of showing that the alleged improper jury instruction on consent amounted to plain error.

## B. The Prosecutor's Statement Was Not Vouching

[38]     In his opening brief, Hosei quotes—without citation to the record—the prosecutor's closing argument[3] and makes the bald assertion that "the Prosecutor vouched for the witness." Appellant's Br. at 14-15 (emphasis omitted). The entire section reads:

> The Government, during their argument, stated: "Now, Mr. Santos says well, you can't figure regret into this because buyer's remorse is not an issue here. Here's the thing, you cannot regret something you do not remember. **She really does not remember**, . . ."

*Id.* at 14-15. The People rightly note that "Hosei's 'argument' regarding vouching contains no analysis, no citations to case law, and does not even pinpoint where in the record the statement may be found." Appellee's Br. at 21. They argue that the claim is waived due to inadequate

---

[3] That this came from closing arguments is disclosed only by the People's brief. Appellee's Br. at 21.

briefing. *Id.* In Hosei's reply brief, he recites the plain error standard and adds six sentences of analysis about why the quoted statement was vouching. Reply Br. at 4-5.

[39] "Improper '[v]ouching occurs when the government places the prestige of the government behind the witnesses through personal assurances of their veracity. . . .'" *People v. Guerrero*, 2017 Guam 4 ¶ 43 (quoting *People v. Mendiola*, 2010 Guam 5 ¶ 16). "Vouching of that sort is dangerous precisely because a jury 'may be inclined to give weight to the prosecutor's opinion in assessing the credibility of witnesses, instead of making the independent judgment of credibility to which the defendant is entitled.'" *Id.* (quoting *Mendiola*, 2010 Guam 5 ¶ 16). We have refused to find improper vouching when a "prosecutor was referring to the evidence and summarizing what the jury had already heard." *Id.* ¶ 54. We find additional support for the conclusion that a statement does not constitute vouching where the jury may have drawn the same reasonable inference. *Id.*

[40] As the People highlight, the statement Hosei claims to constitute vouching is almost a verbatim quote from the victim. Appellee's Br. at 23. On cross-examination, the following exchange took place: "Q: So, just to clarify -- or, actually, let me just ask you again. Do you really not remember or are you just pretending not to remember? A: I really don't remember." Tr. at 61-62 (Jury Trial Day 4). The prosecutor was referring to the evidence and summarizing what the jury had heard. Because the jury could have reasonably inferred that the victim "really did not remember" the assault, the prosecutor did not vouch for the witness. We find no error.

**C. Hosei Has Not Met the Burden of Persuasion that there Is Insufficient Evidence to Find that S.K. Was Physically Helpless**

**1. The People advocate for a marshaling standard that Guam has not adopted and Utah no longer follows**

[41] The People also request that Hosei lose on this issue based on a procedural default. Appellee's Br. at 24. Unlike invited error and inadequate briefing, the People ask this court to

apply a procedural rule—marshaling—that we have never adopted. The Utah Supreme Court coined the term "marshaling" in 1985 to describe the responsibility of an appellant to "marshal and distinguish evidence supportive of a challenged verdict or finding of fact." *State v. Nielsen*, 2014 UT 10 ¶¶ 35-36, 326 P.3d 645 (citing *Scharf v. BMG Corp.*, 700 P.2d 1068, 1070 (Utah 1985)). Although originally conceived of as "a mere component of an appellant's broader burden of overcoming the weighty deference granted to factual determinations in the trial court," over time marshaling migrated towards the "hard-and-fast *default* notion of a procedural rule." *Id.* ¶¶ 35, 37.

[42]    The People rely primarily on Utah cases for the "hard-and-fast default notion of marshaling" that they advocate, but, troublingly, they do not acknowledge Utah abandoned that standard nearly a decade ago as "more problematic than helpful." *Id.* ¶ 40. In relying on language favorable to their desired outcome from overruled cases, the People seem to be lawyering by headnote. In Guam, an appellant is not required "to present 'every scrap' of evidence and to play 'devil's advocate,'" *id.*; our standard merely requires they establish "that the evidence was legally insufficient to sustain a guilty verdict," *Song*, 2012 Guam 21 ¶ 28 (citation omitted).

[43]    As the People present no persuasive reason for Guam to adopt a procedural marshaling rule that would result in Hosei being defaulted on this claim, we reject this invitation and decide the issue on the merits.

### 2. There is sufficient evidence to support the conviction on the physically helpless element

[44]    Hosei claims there was insufficient evidence that the victim was physically helpless.[4] The People counter with several facts in the record that support a jury finding S.K. was physically

---

[4] Hosei does not claim there was insufficient evidence to support the element of being aided and abetted. As discussed below we find there was sufficient, but not overwhelming, evidence to support that element.

helpless. Appellee's Br. at 26-27. Although at the time of Hosei's convictions, Guam's definition of physical helplessness may have been limited to extreme cases of voluntary intoxication, Hosei has failed to show an absence of evidence such that no reasonable jury could have concluded this was one of those rare cases.

### a. The sufficiency standard

[45]    If a defendant has raised the issue of sufficiency of evidence by motion for judgment of acquittal in the trial court, the denial of the motion is reviewed *de novo*. *People v. Anastacio*, 2010 Guam 18 ¶ 10; *People v. Perez*, 2021 Guam 18 ¶ 27 ("The trial court determines whether it should grant a motion for judgment of acquittal by applying the same test used when assessing the sufficiency of the evidence."). On an insufficiency-of-the-evidence claim, this court reviews "the evidence presented at trial in the light most favorable to the People and determine[s] whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *People v. Kotto*, 2020 Guam 4 ¶ 29 (quoting *Song*, 2012 Guam 21 ¶ 27); *see also Perez*, 2021 Guam 18 ¶ 27 ("In our analysis, we afford the People 'the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom.'"). "This standard is highly deferential to the jury's verdict and not deferential to the trial court's decision to deny the motion for a judgment of acquittal." *Jesus*, 2009 Guam 2 ¶ 19 (citing *Jackson*, 443 U.S. at 319).

[46]    The defendant bears the burden to establish that the evidence was legally insufficient to sustain a guilty verdict. *People v. Pinaula*, 2023 Guam 2 ¶ 60 (quoting *Kotto*, 2020 Guam 4 ¶ 29). "A verdict of guilty removes the presumption of innocence to which a defendant had formerly been entitled and replaces it with a presumption of guilt." *Moses*, 2022 Guam 17 ¶ 17 (quoting *People v. George*, 2012 Guam 22 ¶ 50 (per curiam)); *see also Jesus*, 2009 Guam 2 ¶ 19 ("[I]t is not the appellate court's function to determine guilt or innocence. . . .    Those judgments are

exclusively for the jury, given always the necessary minimum evidence *legally* sufficient to sustain the conviction." (alteration in original) (quoting *Kotteakos v. United States*, 328 U.S. 750, 763-64 & n.18 (1946))).  This court's review must "give[] full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  *Pinaula*, 2023 Guam 2 ¶ 60 (alteration in original) (quoting *Anastacio*, 2010 Guam 18 ¶ 18).

[47]    A sufficiency-of-the-evidence analysis evaluates whether there is enough direct or circumstantial evidence presented so reasonable inferences may be drawn supporting each element of the crime charged.  *Jesus*, 2009 Guam 2 ¶ 62.  This court is concerned solely "with the existence or nonexistence of evidence, not its weight."  *Kotto*, 2020 Guam 4 ¶ 29 (quoting *Song*, 2012 Guam 21 ¶ 29).  A review for sufficiency of evidence "does not require a court to 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'"  *Jesus*, 2009 Guam 2 ¶ 59 (quoting *Jackson*, 443 U.S. at 318-19).  Instead, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact *could* have found the essential elements of the crime beyond a reasonable doubt."  *Id.* (citing *Jackson*, 443 U.S. at 319).

### b.  The law on physical helplessness

[48]    Although Hosei does not cite a case in his opening brief that supports his sufficiency argument,[5] at oral argument he advocated a reading of 9 GCA § 25.10(a)(6) where voluntary intoxication and physical helplessness are mutually exclusive.[6]  Hosei argues that a voluntarily

---

[5] As the People note, in the case of *People v. Garcia*—the only case cited by Hosei beyond recitation of the standard of review—the Michigan Court of Appeals upheld a CSC conviction, observing, "The victim's consent was only relevant to show that the victim was not physically helpless."  *People v. Garcia*, No. 316113, 2014 WL 3705100, at *2 (Mich. Ct. App. July 24, 2014) (per curiam) (unpublished); *see also* Appellant's Br. at 15; Appellee's Br. at 27.

[6] This is consistent with his opening brief, where "mental incapacitation" was continually raised.  Appellant's Br. at 12, 14, 16.

intoxicated victim could never be physically helpless unless that intoxication causes sleep or unconsciousness. *See* Reply Br. at 5 ("There was no evidence that SK was asleep and there was no evidence that she was unconscious.").

[49] This argument seeks to exploit a deficiency in the law that has long existed in CSC cases when the victim was voluntarily intoxicated:

> The common law has long prohibited intercourse with victims whose permanent or temporary physical conditions including unconsciousness, sleep, or other physical helplessness precluded them from resisting the sexual act. The physical helplessness standard is too narrow, however, covering only the most extreme cases of incapacitation; the standard fails to cover cases where the intoxication fell short of complete loss of consciousness or where the victim of a sexual assault drifted in and out of consciousness.

Michal Buchhandler-Raphael, *The Conundrum of Voluntary Intoxication and Sex*, 82 Brook. L. Rev. 1031, 1050 (2017). This argument is misplaced because it ignores the plain language of former section 25.10(a)(6) which included "for any other reason" that a victim "is physically unable to communicate unwillingness to an act." 9 GCA § 25.10(a)(6) (2005). We decline to adopt a bright-line rule that a victim that is voluntarily intoxicated can never be physically helpless unless they are asleep or unconscious.

[50] A plurality of states define physical helplessness much like Guam by including the catch-all "physically unable to communicate."[7] Additionally, abundant persuasive authority supports the conclusion that a voluntarily intoxicated victim can be physically helpless because they are physically unable to communicate. *See, e.g.*, *People v. Bjork*, 963 N.Y.S.2d 472, 476 (App. Div.

---

[7] *See, e.g.*, Ala. Code § 13A-6-60(2)(c); Ark. Code Ann. § 5-14-101(8); Colo. Rev. Stat. § 18-3-401(3); Conn. Gen. Stat. Ann. § 53a-65(6); Fla. Stat. Ann. § 794.011(1)(f); Haw. Rev. Stat. Ann. § 707-700; Iowa Code Ann. § 709.1A; Ky. Rev. Stat. Ann. § 510.010(6); Md. Code Ann., Crim. Law § 3-301(c); Mich. Comp. Laws Ann. § 750.520a(m); Minn. Stat. § 609.341; Miss. Code Ann. § 97-3-97(d); Mont. Code Ann. § 45-2-101(58); N.J. Stat. Ann. § 2C:14-1(g); N.Y. Penal Law § 130.00(7); N.C. Gen. Stat. Ann. § 14-27.20(3); Or. Rev. Stat. § 163.305(4); 11 R.I. Gen. Laws Ann. § 11-37-1(6); S.C. Code Ann. § 16-3-651(g); Tenn. Code Ann. § 39-13-501(5); Va. Code Ann. § 18.2-67.10(4); Wash. Rev. Code Ann. § 9A.44.010(12); W. Va. Code Ann. § 61-8B-1(5); Wyo. Stat. Ann. § 6-2-301(a)(iii).

2013) ("A person who is asleep or unable to communicate as a result of voluntary intoxication is considered to be physically helpless."); *State v. Davis*, 185 A.3d 654, 659 (Conn. App. Ct. 2018) ("[I]n order to be rendered physically helpless, the complainant must have been either (1) unconscious, or (2) unable to communicate—both verbally and physically—her lack of consent to the sexual act. The latter scenario commonly involves sexual assault that occurs while the victim is sleeping or heavily intoxicated.").[8]

[51]     In prior cases, we have recognized a victim can be physically helpless as a result of voluntary intoxication, even if that were limited to only extreme cases of intoxication. *Reyes*, 2020 Guam 33 ¶ 73. We read the standard of "physically helpless"—as written at the time of Hosei's conviction—expansively to include conscious but heavily intoxicated persons unable to communicate unwillingness to a sexual act.

[52]     Without citation to authority, Hosei argues that amendment of Guam's CSC statutory scheme raises a presumption that his conduct was not criminalized when it occurred.[9] It is true that "in construing a statute, a court may look to later acts of the legislature to ascertain the correct meaning of a prior statute." *Jenkins v. Montallana*, 2007 Guam 12 ¶ 19 (citation omitted). But we reject Hosei's argument as unfounded; as a principle of statutory construction, reference to subsequent legislation in this case is at best indeterminate.

---

[8] Although unpublished, Michigan caselaw also supports our conclusion that a voluntarily intoxicated victim can be physically helpless. *See People v. Stevens*, No. 350875, 2020 WL 5582724 (Mich. Ct. App. Sept. 17, 2020) (affirming conviction on sufficiency challenge where victim blacked out from alcohol consumption); *People v. Gonzalez*, No. 344946, 2019 WL 6519156 (Mich. Ct. App. Dec. 3, 2019) (affirming conviction on sufficiency challenge where victim awoke from drug induced sleep); *People v. Lewis*, No. 304535, 2012 WL 4747214 (Mich. Ct. App. Oct. 4, 2012) (affirming conviction on sufficiency challenge where victim was unconscious and video of gang rape recorded co-defendant stating "she is so passed out"); *People v. Gutierrez*, No. 317593, 2014 WL 7338885 (Mich. Ct. App. Dec. 23, 2014) (affirming conviction on sufficiency challenge where victim was described as "'out of it' or sleeping for much of the evening and was consistently groggy or unresponsive" and victim awoke to assault).

[9] As discussed above, the definition of "physically helpless" was amended in 2022 to included "unable to withhold consent or to withdraw consent because of a physical condition." 9 GCA § 25.10(a)(7)(c) (2022).

[53]    Rather than establishing the claimed "presumption" that the conduct was not criminalized, the amendment can just as plausibly be seen as an acknowledgment that "[d]rafting a legal standard to determine the criminal liability of an actor who sexually penetrates an intoxicated person presents a considerable challenge." Model Penal Code - Sex. Assault & Related Offenses Section 213.3 TD No 5 at 195. That the legislature amended the code to recognize voluntary intoxication and close any potential loopholes in cases when the victim falls short of complete unconsciousness (or drifts in and out of consciousness) was a recognition of the "legal and moral justification for clear prohibitions against knowingly assaulting voluntarily intoxicated individuals." *Compare* Guam Pub. L. 36-101 (June 15, 2022), Bill No. 243-36 (LS) at 2 (citing Buchhandler-Raphael, *supra*), *with* Reply Br. at 1. *See also* Allison C. Nichols, *Out of the Haze: A Clearer Path for Prosecution of Alcohol-Facilitated Sexual Assault*, 71 N.Y.U. Ann. Surv. Am. L. 213, 223 (2015) (noting the "problems associated with trying to fit drug [and alcohol]-induced sexual conduct into categories such as physical helplessness, rather than dealing more straightforwardly with the problem of reduced capacity to consent based on intoxication"). The legislative intent to articulate those prohibitions clearly does not displace our reading of the "physically helpless" standard prior to amendment, which included conscious but heavily intoxicated persons unable to communicate unwillingness to a sexual act.

[54]    The prior version of the law left open the possibility that a defendant could be convicted in the "most extreme cases of inability or incapacitation" caused by voluntary intoxication. *See* Bill No. 243-36 (LS) at 2; Buchhandler-Raphael, *supra*. As the comments to a recent draft of the Model Penal Code observe:

> [I]n one jurisdiction, a standard of "physically helpless" may be read by courts expansively to include conscious but heavily intoxicated persons, while in another jurisdiction, case law interprets a "physical helplessness" statutory provision to require total incapacity, and nearly incapacitating intoxication is instead covered

by a separate provision. Or a state may cover intoxication under the mental-impairment provision as well as a separate provision.

Model Penal Code - Sex. Assault & Related Offenses Section 213.3 TD No 5 at 196-97 (citations omitted).

[55]    Although Hosei's proposed narrow reading of "physically helpless" to require total incapacity may be availing in other jurisdictions, this was not the law of Guam when he was convicted.

### c. Hosei has not met his burden of showing the evidence was insufficient

[56]    Hosei is left to argue that there is insufficient evidence to support a finding that this was an extreme case of intoxication, i.e., that S.K. was so heavily intoxicated that she was unable to communicate unwillingness to the sexual act. This is perhaps the rare CSC case where a "he said, she said" defense cannot be invoked—there is a video that speaks for itself and testimony from two of his co-defendants.

[57]    Although Hosei points to the video as evidence that S.K. could physically move and argues her lack of memory could also be consistent with an alcoholic blackout in which she appeared to be functioning normally,[10] the prosecution's evidence need not rule out every hypothesis other than guilt to be sufficient. *See Jackson*, 443 U.S. at 326; *People v. Quinata*, 1999 Guam 6 ¶ 9 (adopting the *Jackson* standard). The jury was presented with this theory and could have rejected the testimony of S.K., Borja, and Piyelit along with the People's characterization of the video. As the jury returned a guilty verdict, it is not the place of the courts "to resolve conflicts in the evidence, to pass upon the credibility of witnesses, to determine the plausibility of explanations,

---

[10] We use "blackout" in this section to refer to significant memory loss caused by alcohol consumption, where the individual may or may not appear to be functioning normally. *See People v. Hilliard*, No. 252521, 2005 WL 94774, at *2 (Mich. Ct. App. Jan. 18, 2005) (per curiam) (unpublished).

or to weigh the evidence." *People v. Erwin*, 2019 Guam 20 ¶ 14 (quoting *People v. Martin*, 2018 Guam 7 ¶ 23).

**[58]**     S.K.'s own testimony established that she has no memory of the assault and that she was blacked-out.  When viewed in the light most favorable to the prosecution, a rational trier of fact could have found she was too intoxicated to communicate an unwillingness to have sex. *See Reyes*, 2020 Guam 33 ¶ 73.  Although her memory loss may not prove she was physically unable to communicate at the time of sexual contact, a rational jury could have considered her blackout as further evidence of her degree of inebriation.  *See People v. Stevens*, No. 350875, 2020 WL 5582724, at *2 (Mich. Ct. App. Sept. 17, 2020).

**[59]**     Hosei has failed to meet his burden of showing the evidence was insufficient to sustain convictions for one count of CSC I and one count of CSC III.  Applying a *de novo* standard of review, a rational trier of fact could have found, beyond a reasonable doubt, that S.K. was physically helpless.  *See id.*

## D.  The Aiding and Abetting Instruction Constituted Plain Error

**[60]**     Hosei admits that his trial counsel did not object to the aiding and abetting instruction, triggering plain error review. Appellant's Br. at 18; *Gargarita*, 2015 Guam 28 ¶ 11.  "Plain error is highly prejudicial error." *Quitugua*, 2009 Guam 10 ¶ 11.  "This is 'not a run-of-the-mill remedy'; rather, 'it is invoked only in exceptional circumstances.'" *People v. Taisacan*, 2018 Guam 23 ¶ 34 (quoting *People v. Quenga*, 2015 Guam 39 ¶ 89).  Hosei bears the burden to demonstrate that reversal is warranted.  *See id.* at 37.

//

//

//

**1.  Was the jury instruction in error?**

[61]     As charged, the People were required to prove as an essential element of CSC I that Hosei

was aided or abetted by one or more other persons.  *See People v. Manila*, 2015 Guam 40 ¶ 48; 9

GCA § 25.15(a)(4) (2005).  Jury instruction 6F defined "aiding and abetting":

> *Aiding and abetting* means before or during the alleged sexual act, the
> defendant was assisted by another person, who either did something or gave
> encouragement to assist the commission of the crime.

RA, tab 150 at 41 (Jury Instrs.).  The aiding and abetting instruction was proposed by the People

and was taken verbatim from the Michigan Criminal Jury Instructions.  Appellee's Br. at 29; Tr.

at 72 (Jury Trial Day 5).

[62]     The People argue that "Guam's CSC statutes were patterned after Michigan's, so, . . .

[t]he Michigan jury instruction on the same provision is a proper application of Guam law."

Appellee's Br. at 29 (citations omitted).  However, the instruction was neither a complete statement

of Michigan law nor a correct statement of Guam law.  Michigan law defines CSC I to include as

an essential element that "[t]he actor is aided or abetted by 1 or more other persons . . . ."  Mich.

Comp. Laws Ann. § 750.520b(1)(d).  Although the Michigan jury instruction given in this case

did not address intent of aiders and abettors, the Michigan Court of Appeals has held that section

750.520b(1)(d):

> requires that the other person "aided or abetted" the defendant, which means that
> the other person performed acts or gave encouragement that assisted the
> commission of the crime *and intended the commission* of the crime *or had
> knowledge that the principal intended* its commission at the time that the person
> gave aid or encouragement.

*People v. Venson*, No. 339921, 2019 WL 942310, at *7 (Mich. Ct. App. Feb. 26, 2019) (per

curiam) (emphases added) (unpublished).  Thus, under Michigan law, to prove the element of

being aided or abetted, a showing must be made of the third party's specific intent, or the third

party's knowledge of the defendant's intent. As explained in another case:

> "The phrase 'aids or abets' is used to describe any type of assistance given to the perpetrator of a crime by words or deeds that are intended to encourage, support, or incite the commission of that crime." *People v. Moore*, 679 N.W.2d 41, 46 (Mich. 2004) (citation omitted). "Specific intent is not required of an aider and abettor if it can be shown that defendant 'rendered his aid and assistance to the principal actor with the knowledge that the principal himself possessed the intent necessary to be guilty of the crime.'" *People v. Olszewski*, 326 N.W.2d 394, 396 (Ct. App. 1982).

*People v. Sikorski*, No. 320867, 2016 WL 6496092, at \*5 (Mich. Ct. App. Nov. 1, 2016) (per

curiam) (unpublished).

[63]     Although Guam's CSC laws are modeled after Michigan, Guam's aiding and abetting

statute is not. *Compare* 9 GCA § 4.60 (2005), *with* Mich. Comp. Laws Ann. § 767.39. Michigan

Criminal Jury Instruction 20.6's definition of aiding and abetting is based on caselaw from the

Supreme Court of Michigan interpreting Mich. Comp. Laws § 767.39.[11] In a past case, we ruled

on what the People must prove to satisfy the aiding and abetting element in a CSC I prosecution:

> The People were also required to prove that Manila was aided and abetted by Cha . . . . S.W. testified that Cha told her to go into the private room with Manila and "take care of him." Applying the standard for accomplice liability found in 9 GCA § 4.60, in order for Cha to have aided and abetted Manila, she must have induced or aided Manila to commit first degree CSC with the intention of promoting or assisting in the commission of first degree CSC. 9 GCA § 4.60. There was no evidence presented at trial that Cha intended for Manila to have sex with S.W. against her will.

*Manila*, 2015 Guam 40 ¶ 48. Furthermore, we have upheld a CSC II conviction when a defendant

made sexual contact with a victim *while* his accomplices forced themselves on her. *Martin*, 2018

Guam 7 ¶ 30.

---

[11] The instruction's reference guide cites Mich. Comp. Laws § 767.39 and *People v. Pollard*, 363 N.W.2d 453, 455 (Mich. Ct. App. 1985) (per curiam) (applying aider and abettor statute to first-degree criminal sexual conduct and observing that being aided and abetted is an aggravating circumstance making an act first-degree instead of third-degree CSC).

**[64]**     "Generally, when a legislature adopts a statute which is identical or similar to one in effect in another jurisdiction, it is presumed that the adopting jurisdiction applies the construction placed on the statute by the originating jurisdiction." *Sumitomo Constr. Co. v. Zhong Ye, Inc.*, 1997 Guam 8 ¶ 7.  As our CSC statutes are patterned after Michigan's statutes, we look to Michigan cases to aid us in interpreting our CSC statutes. *People v. Penaflorida*, 2022 Guam 14 ¶ 14.  But the interpretation of the statutes by Michigan courts is only persuasive and does not bind or control this court's analysis. *See Sumitomo Constr.*, 1997 Guam 8 ¶ 7.

**[65]**     "[T]erms of art—words that carry an accepted or specialized meaning at common law— are to be construed in light of their accepted technical meaning unless the legislature has indicated otherwise." *People v. Tennessen*, 2010 Guam 12 ¶ 10 (per curiam).  We find that the phrase "aided or abetted" carries a technical legal meaning (it is a term of art) referring to the theory of accomplice liability codified in 9 GCA § 4.60.  When the legislature chose the previously construed "aided or abetted" language to describe which third-degree CSC will be elevated to first-degree CSC, it chose familiar language which brought with it the whole body of law interpreting section 4.60.  *See State v. Thomas*, 381 N.W.2d 567, 572 (Wis. Ct. App. 1985) ("The concept of aiding and abetting another in the commission of a crime as set forth in [Wisconsin's aiding and abetting statute] is well-known in the criminal law of this state.  The statute has been repeatedly construed by the appellate courts of this state.  When the legislature chose the previously construed 'aids and abets' language to describe which second-degree sexual assaults will be elevated to first-degree sexual assaults, it chose familiar language which brought with it the whole body of law interpreting sec. 939.05.").  And we have held that our aiding and abetting statute requires showing

specific intent.[12]  *See* 9 GCA § 4.60; *People v. Kanistus*, 2017 Guam 26 ¶ 15; *Manila*, 2015 Guam 40 ¶ 48; *see also State v. Carpenter*, 854 S.E.2d 825, 829 (N.C. Ct. App.) ("[T]he element of abetting [in a first degree sex offense] requires 'a criminal state of mind-*specifically, it requires that the accomplice has both knowledge of the perpetrator's unlawful purpose to commit a crime, and the intent to facilitate the perpetrator's unlawful purpose.*'"), *review denied*, 858 S.E.2d 113 (S.C. 2021).

[66]    Our previous rulings have underlined that our aiding and abetting statute necessitates a demonstration of specific intent.  Consequently, the instruction provided to the jury, which omitted this crucial requirement, was in error.

### 2.  Was the error clear or obvious under current law?

[67]    To satisfy the second prong of the plain error test, at a minimum, the error must be clear or obvious "under current law."  *Felder*, 2012 Guam 8 ¶ 21 (citing *Olano*, 507 U.S. at 734).  To be clear or obvious, the error cannot be subject to reasonable dispute.  *Puckett v. United States*, 556 U.S. 129, 135 (2009).  The *Manila* case is on point regarding the People's burden of proof on the element of aiding and abetting in a CSC I prosecution.  Although *People v. Martin* suggests there may have been a lower evidentiary bar, it was clear or obvious that some instruction on the co-defendant's mental state was required.  *See* 2018 Guam 7 ¶¶ 25, 30 (affirming CSC convictions where accomplice told police they were holding victims legs because "she . . . was trying to get up," and defendant admitted to sexual contact "while his accomplices forced themselves on her" (omission in original)).  The error was clear under existing law.

---

[12] We note that requiring proof of a third party's specific intent to meet this element does not require the accomplice also be convicted under the aiding and abetting statute.  *See Venson*, 2019 WL 942310, at *7 ("Defendant contends that there was insufficient evidence to support his conviction because an accomplice is a necessary element of the offense and the jury acquitted his alleged accomplice, Williams, of all charges.  Defendant is incorrect.  The plain language of the relevant statute does not include any express requirement that the person who aided or abetted the defendant be convicted of any offense.  *See* Mich. Comp. Laws § 750.520b(1)(d).").

### 3. Did the error affect Hosei's substantial rights?

[68]     Even though an error is clear or obvious under current law, under plain error review we will not reverse unless the error affected the defendant's substantial rights. *People v. Rachulap*, 2022 Guam 9 ¶ 41; *Quitugua*, 2009 Guam 10 ¶ 11; 8 GCA § 130.50(b) (2005). The burden lies with the defendant to demonstrate that the error affected his substantial rights. *Felder*, 2012 Guam 8 ¶ 22 (citations omitted). An incorrect instruction on an element of an offense or on an aspect of accomplice liability is not a structural error that requires automatic reversal. *Taisacan*, 2018 Guam 23 ¶ 37. An erroneous jury instruction on an element of an offense affects a defendant's substantial rights if it is "reasonably probable" that the jury would have acquitted but for the instructional error. *People v. Wesen*, 2022 Guam 18 ¶ 17 (citations omitted). Evidentiary sufficiency does not determine whether a defendant's substantial rights were affected by an erroneous jury instruction on an essential element of an offense. *Id.* ¶ 20.

[69]     Hosei argues that "[t]he standard of proof between the Guam statute and the instruction given are different . . . . The giving of this instruction and its lower standard of proof is absolutely critical in this case, for if the jury did not find that there was an aiding and abetting by two other persons, then he could not be guilty as charged." Reply Br. at 6. Here, the prejudicial effect on the outcome is evident. *See People v. Jones*, 2006 Guam 13 ¶ 45. There is a reasonable probability that failing to instruct the jury that Borja and Piyelit must have had the specific intent to promote or assist in the commission of CSC I affected the jury's verdict. *See United States v. Ornelas*, 906 F.3d 1138, 1145 (9th Cir. 2018); *see also United States v. Fuchs*, 218 F.3d 957, 962 (9th Cir. 2000) (finding omission of particular jury instruction affected defendant's substantial rights as absence of particular instruction created genuine possibility that jury convicted on a legally inadequate ground).

[70] The jury acquitted Hosei of being aided or abetted in "causing his finger to enter the genital opening of S.K." when it convicted him of the lesser-included offense of CSC III on the instructions given to it. *See* RA, tabs 151-154 (Jury Verdict Forms 1-4); RA, tab 142 (Am. Indictment); RA, tab 150 at 50 (Jury Instrs.). It is reasonably probable that had the jury understood that specific intent was a required element of the other CSC I charge, it would have found him not guilty on this charge as well. *Cf. Kanistus*, 2017 Guam 26 ¶¶ 28, 33 (rejecting such an argument where there was overwhelming evidence of the defendant's specific intent).

[71] Although there is circumstantial evidence of Borja and Piyelit's intent, evidentiary sufficiency does not determine whether a defendant's substantial rights were affected by an erroneous jury instruction on an essential element of an offense; "[i]n the context of alleged instructional error, a defendant's substantial rights are violated where it is reasonably probable he would have been acquitted 'had the trial court properly instructed the jury' on the elements of the offense." *Wesen*, 2022 Guam 18 ¶ 20 (alteration in original) (quoting *White*, 2020 Guam 19 ¶ 10). Hosei's contention revolves around the premise that the jury was misguided by a flawed instruction, which lowered the prosecution's burden of proof. "[U]pon a review of the entire record," we find he has made a sufficient showing that "the probability of a different result is 'sufficient to undermine confidence in the outcome' of the proceeding." *See Moses*, 2022 Guam 17 ¶ 19 (quoting *Lessard*, 2019 Guam 10 ¶ 16). Because it is reasonably probable Hosei would have been acquitted of CSC I had the jury properly been instructed, his substantial rights were affected.

### 4. Is reversal necessary to prevent a miscarriage of justice or maintain the integrity of the judicial process?

[72] "Reversal for plain error is not mandatory. Plain error reversals are discretionary, not as a matter of right, and should be employed only to correct a miscarriage of justice or maintain the

integrity of the judicial process." *People v. Aldan*, 2018 Guam 19 ¶ 31 (internal citations omitted). "[M]ost courts have interpreted the standard necessary to reverse as demanding something short of a showing of innocence." *Jones*, 2006 Guam 13 ¶ 48. "Reversal may be necessary to maintain the integrity of the judicial process when the trial court fails to properly instruct the jury on fundamental aspects of a crime and evidence." *Aldan*, 2018 Guam 19 ¶ 31. "[A]llowing the defendant's conviction to stand, given the likelihood that the jury may not have convicted had they been properly instructed, would be a 'miscarriage of justice.'" *Jones*, 2006 Guam 13 ¶ 48 (quoting *Fuchs*, 218 F.3d at 963).

[73]     Though there is no precise definition of what would amount to a miscarriage of justice, we find that the result in this case meets that standard. *See id.* ¶ 49. There is a reasonable probability that the jury convicted Hosei without finding each element of the offense beyond a reasonable doubt. *See id.* "It is the duty of the prosecution to prove each element beyond a reasonable doubt." *Id.* (citing *People v. Root*, 2005 Guam 16 ¶ 13). "It is evident to this court that to allow the conviction to stand would relieve the prosecution of this burden." *Id.* Eliminating this burden on the prosecution would "seriously affect the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quoting *United States v. Dobson*, 419 F.3d 231, 241 (3d Cir. 2005)). "[T]he omission of an essential element of an offense [in a jury instruction] *ordinarily* constitutes plain error. [This] is consistent with the Supreme Court's instruction that due process requires 'proof beyond a reasonable doubt of every fact necessary to constitute the crime with which [the defendant] is charged." *Id.* (alterations in original) (quoting *United States v. Haywood*, 363 F.3d 200, 207 (3d Cir. 2004)).

[74]     Our analysis suggests that if Hosei's conviction is allowed to stand, it would relieve the prosecution of their duty to prove every component of the alleged crime beyond a reasonable

doubt. This would undeniably taint the reputation and trust in judicial proceedings. Therefore, all four prongs of the plain error analysis have been met. Hosei has shown plain error in the jury instruction for CSC I, and we reverse that conviction. Hosei's remaining conviction for CSC III is unaffected by this decision.

[75]    "Finally, having found instructional error but sufficient evidence, we must decide what happens next." *Gathy v. United States*, 754 A.2d 912, 919 (D.C. 2000). Federal appellate courts have "uniformly concluded that they may direct the entry of judgment for a lesser-included offense when a conviction for a greater offense is reversed on grounds that affect only the greater offense." *Rutledge v. United States*, 517 U.S. 292, 306 (1996) (citations omitted). The D.C. Court of Appeals has also held that it "may direct the entry of judgment for a lesser-included offense when a conviction for a greater offense is reversed on grounds that affect only the greater offense." *Gathy*, 754 A.2d at 919. The same principle applies to this court. *Compare* 8 GCA § 130.60 (2005), *with* D.C. Code Ann. § 17-306 (West); 28 U.S.C.A. § 2106 (Westlaw current through Pub. L. 118-22 (2023)); *see also Moses*, 2022 Guam 17 ¶ 1 ("Moses asks the court to reduce his First Degree CSC convictions to Third Degree CSC and remand the case for resentencing."). If this court finds instructional error on the element of being "aided or abetted" in the CSC I charge, but no other reversible error, it may authorize the trial court, with the consent of the government, to enter a judgment of conviction on the lesser-included offense of CSC III. *See Gathy*, 754 A.2d at 915, 919.

[76]    We therefore reverse Hosei's conviction of CSC I and remand the case for further proceedings not inconsistent with this opinion. If the government consents, the Superior Court shall enter a judgment of conviction against Hosei on the lesser-included offense of CSC III. Alternatively, the government may pursue a retrial on the original charge of CSC I. *See id.* at 920;

*Aldan*, 2018 Guam 19 ¶ 34 ("Because it was plain error to provide Jury Instruction 3B, we reverse the judgment of conviction and remand for a new trial." (emphases omitted)).

## V.  CONCLUSION

**[77]**     Hosei has failed to establish that the consent instruction was plain error or that the prosecutor's statement constituted vouching.  The Superior Court did not err when it denied Hosei's motion for judgment of acquittal because there was sufficient evidence of S.K.'s physical helplessness to sustain the jury's guilty verdict.  But he has shown that the aiding and abetting instruction was plain error.  The CSC III conviction is **AFFIRMED**, the CSC I conviction is **REVERSED**, and we **REMAND** the case for further proceedings not inconsistent with this opinion.

/s/
F. PHILIP CARBULLIDO
Associate Justice

/s/
KATHERINE A. MARAMAN
Associate Justice

/s/
ROBERT J. TORRES
Chief Justice