
# IN THE SUPREME COURT OF GUAM

**PEOPLE OF GUAM,**
Plaintiff-Appellee,

**v.**

**WILLIAM ROBERT REYES,**
Defendant-Appellant.

Supreme Court Case No. CRA24-013
Superior Court Case No. CF0747-23

## OPINION

## Cite as: 2025 Guam 8

Appeal from the Superior Court of Guam
Argued and submitted on February 25, 2025
Hagåtña, Guam

Appearing for Defendant-Appellant:
Heather M. Quitugua, *Esq.*
Law Offices of Heather Martinez Quitugua, PC
414 W. Soledad, Ste. 500A
Hagåtña, GU 96910

Appearing for Plaintiff-Appellee:
Nathan M. Tennyson, *Esq.*
Acting Deputy Attorney General (former)
Office of the Attorney General
Appellate & Writing Division
590 S. Marine Corps Dr., Ste. 802
Tamuning, GU 96913



**E-Received**
12/4/2025 9:19:32 AM

BEFORE: ROBERT J. TORRES, Chief Justice; F. PHILIP CARBULLIDO, Associate Justice; and KATHERINE A. MARAMAN, Associate Justice.

**TORRES, C.J.:**

[1]     Defendant-Appellant William Robert Reyes appeals his convictions of first and second degree criminal sexual conduct. He challenges the trial court's denial of two motions: his motion for a mistrial and his motion for a judgment of acquittal of first-degree criminal sexual conduct.

[2]     Reyes moved for a mistrial after the trial court allowed Plaintiff-Appellee People of Guam to cross-examine him about a prior arrest and indictment for alleged crimes against three girls from over twenty years ago. Reyes argues the trial court's denial of this motion was an abuse of discretion. We agree. After overruling Reyes's objection to the questioning, the trial court denied the motion for a mistrial based on an inapplicable rule of evidence, without performing any analysis under any relevant rule of evidence and without taking corrective measures to remedy the risk of unfair prejudice. We further conclude the error was not harmless.

[3]     Reyes further argues that the trial court erred when it denied his motion for a judgment of acquittal challenging the sufficiency of the evidence of "sexual penetration." Despite J.S.'s testimony that Reyes did not "enter" or "go inside" her vagina, a rational trier of fact could have found sexual penetration based on J.S.'s other testimony that his fingertips slightly entered her vagina when he tried to penetrate her, his fingertips passed her labia majora, and she felt severe pain for up to two days after the incident. Thus, the trial court did not err when it denied Reyes's motion for acquittal.

//

//

//

**[4]**    Regardless of our finding the evidence sufficient, the trial court's denial of Reyes's motion for a mistrial was an abuse of discretion warranting reversal.[1]  We vacate the judgment and remand for a new trial.

## I. FACTUAL AND PROCEDURAL BACKGROUND

**[5]**    The People charged Reyes with first-degree criminal sexual conduct ("CSC I") and second-degree criminal sexual conduct ("CSC II"), both as first-degree felonies.  J.S. testified that, when she was in elementary school, she would get off the bus at the middle school where Reyes worked, he would take her to his home, and he and his wife would watch her until her parents got off work. J.S. testified that when she was in the third or fourth grade, she was napping in Reyes's bedroom, he came into the room, put his hands down her pants, and used his fingers to touch her vagina. She further testified that she did not tell anyone about this incident until she told her mother in December 2022, when she was nineteen years old.  They went to the police precinct to file a report the next day.  J.S. was twenty years old when she testified at trial.

**[6]**    During J.S.'s direct examination, the People asked, "And when you say he was 'playing' with your [vagina], did he ever actually go inside?" to which J.S. answered, "No."  Transcript ("Tr.") at 60 (Jury Trial, Day 1, Feb. 14, 2024).  When asked, "But what exactly did he do with his fingers?" J.S. responded that he was "going in a circular motion."  *Id.*  She described feeling "pressure on the bottom" and "on the middle part" of her vagina.  *Id.*  When asked if the pressure was coming from inside her vagina, J.S. answered affirmatively.  *Id.*  The People then asked if Reyes's "fingers actually enter[ed]" her vagina "at any point, even if it was just slightly."  *Id.*  J.S. answered that he "tried to but didn't."  *Id.*  When asked to clarify what she meant by "tried to,"

---

[1] Because we vacate on other grounds, we decline to reach Reyes's remaining claims based on the prosecution's leading questions to J.S. on direct examination and arguing a fact not in evidence during closing arguments.

J.S. answered, "Like, basically like trying to force it, but that, like I said, the pressure, that's what I felt." *Id.* When asked to further clarify what she meant by "trying to force it," the People asked what part of Reyes's fingers J.S. felt. *Id.* at 61. J.S. responded, "Like the tip of his fingers." *Id.* The People then asked, "Okay, so, the tip of his fingers you felt that inside?" to which J.S. responded, "Yeah, like he was trying to force it inside." *Id.*

[7]     On cross-examination, J.S. testified that Reyes did not enter her vaginal opening. J.S. testified that, while she did not have an infection or bleeding, she experienced severe pain for a day or two after the incident. On redirect, J.S. testified that Reyes's fingertips passed her labia majora. After the People rested, Reyes's trial counsel moved for a judgment of acquittal for the charge of CSC I, arguing that the People did not provide sufficient evidence of sexual penetration. Viewing the evidence in the light most favorable to the People, the trial court determined that a reasonable person could find Reyes guilty of CSC I beyond a reasonable doubt based on the evidence presented and denied Reyes's motion.

[8]     The next day, Reyes testified in his own defense. During his direct examination, Reyes's counsel asked if he had ever been convicted of a felony or misdemeanor involving lying, cheating, or stealing. Reyes answered that he had not. Reyes also denied ever touching J.S.'s genital area. During cross-examination, he claimed to have hardly seen J.S. around that time, denied that she would ride the bus to his work after school, and denied driving her to his house after school. The People also reminded Reyes that his attorney had asked if Reyes had ever been convicted of a felony or convicted of lying. Then the People asked, "But you got arrested before, right?" Tr. at 23 (Jury Trial, Day 2, Feb. 15, 2024). Defense counsel objected. The People argued that the defense "opened the door." *Id.* at 24. The trial court allowed the line of questioning, citing Guam

Rule of Evidence 609 ("Impeachment by Evidence of Conviction of Crime").  Record on Appeal

("RA"), tab 45 at 1 (Order After Hr'g (Mot. Mistrial), Feb. 22, 2024).  The People continued:

> Q       So, but you were arrested in the year 2002, correct?
>
> A       I'm not sure what year, but -- yeah.
>
> Q       Okay.  And that was for an incident involving your daughter, . . . right?
>
> A       A so-called incident, yes.  But --
>
> Q       Okay --
>
> A       -- never happened.
>
> Q       Okay.  So you're saying you were arrested for it, but it never happened.
>
> A       Uh-hmm.
>
> Q       Okay.  Sorry, when you -- you have to say, yes or no, for the record.
>
> A       Yes.
>
> Q       Okay.  But then you were also arrested for two of, I think it was your neighbors or relatives, the same time that you were arrested for [your daughter].
>
> A       No.
>
> Q       You don't recall being arrested --
>
> A       For my neighbors, no.
>
> Q       Well, with the last name of the girl is [] ring a bell?
>
> A       Yeah, my neighbors were [].
>
> Q       Okay.  So you don't recall being arrested for crimes against them?
>
> A       No.  Never wa- --
>
> Q       Okay.  I'm sorry.
>
> A       Never was arrested for a crime, uh, with them.
>
> Q       Okay.  Well, isn't it true you were indicted for crimes against them?
>
> A       Hmm, no.
>
> Q       Okay.  Well, if I were to show you an indictment, will that refresh your recollection?
>
> A       (No audible response.)
>
> Q       Will that refresh your recollection?
>
> A       Yup. I'll --

Tr. at 24-25 (Jury Trial, Day 2).  The People proceeded to show Reyes the indictment:

> Q      Okay, Mr. Reyes, I'm handing you this piece of paper, have you --
> do you recognize that piece of paper?
>
> A      Can I look at it?
>
> Q      Yes. Yes, please. You can look through all three of the pages.
>
> (Pause)
>
> Q      So I'm not going to ask you what's in the document, but does this
> refresh your rec- -- recollection that you've been indicted?
>
> A      No.
>
> Q      Okay. So you have no recollection of you meeting with Detective
> Amaguin back in 2002 for all three of these females?
>
> A      No.

*Id.* at 26. The People ended their cross-examination without admitting the indictment into evidence.

[9]      After the defense rested, Reyes's counsel renewed all previous objections and his motion for a judgment of acquittal of CSC I. In support of this motion, counsel submitted to the trial court that "her testimony regarding penetration, that there was no penetration to the vaginal opening." *Id.* The trial court denied the motion, reasoning that there was enough evidence for a rational juror to reach a guilty verdict.

[10]      During closing arguments, the People argued to the jury that Reyes's attorney asked whether Reyes had "been indicted for a felony, or anything, because they were trying to say he has no criminal history." Tr. at 15 (Jury Trial, Day 3, Feb. 16, 2024). The prosecutor further recounted that she asked Reyes if he was "arrested for [his] daughter" and "the other two girls" and that he admitted to being arrested for allegations against his daughter but not the other two girls. *Id.* She then used the indictment to argue that the jury should not find Reyes's testimony credible:

> [I p]ulled out the indictment, showed it to him, and he still denies, even though be
> – it's, like, right there, in front of his face. Denies that, denies ever being
> interviewed by the police. So he's not on trial for any of those things, but that whole
> thing was just to show you whether, if you think that Mr. Reyes just has a bad

memory, that he does not remember being indicted for felonies involving children, or he is actually telling you the truth when he's on the stand.

*Id.* Before the defense's closing argument, Reyes's counsel moved for a mistrial based on the People's line of questioning about the 2002 indictment. The People responded that the defense opened the door.

[11] After closing arguments, the trial court read the jury their instructions. These instructions included that a question alone and what the attorneys said in their closing arguments are not evidence. "Sexual penetration" was defined as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body but emission of semen is not required." *Id.* at 51. The judge instructed the jury that the essential elements of CSC I as charged were:

1) On or about the period between October 10, 2012 and October 9, 2013, inclusive;
2) In Guam;
3) The defendant did intentionally engage in sexual penetration with another; to wit, by inserting his fingers into the genital openings of J.S., a minor under 14 years of age.

*Id.* at 52. After giving the instructions, the trial court excused the jury so they could deliberate.

[12] A few hours later, the court reconvened for the jury's verdict. Before the jury returned to the courtroom, the trial court overruled Reyes's motion for a mistrial, stating that it "did some research" and determined that the Ninth Circuit is "a little more lenient" with allowing questioning into prior convictions. Tr. at 2-3 (Jury Trial, Day 3 (Verdict), Feb. 16, 2024). The trial court stated, "This was really just an indictment, but I assume indictment/conviction will be interchangeable so they're a little more lenient in allowing on cross." *Id.* at 2. In its written decision, the trial court found, "The People did not introduce evidence of a prior conviction," and that even treating the evidence as a prior conviction, the People did not present evidence beyond the conviction's

"general nature." RA, tab 45 at 3 (Order After Hr'g (Mot. Mistrial)) (quoting *United States v. Osazuwa*, 564 F.3d 1169 (9th Cir. 2009)). The only rule of evidence in the trial court's written decision was Guam Rule of Evidence 609. *Id.* at 1-3. The trial court ultimately concluded, "Neither manifest necessity nor the ends of public justice dictate[d] granting a mistrial." *Id.* at 2. The jury found Reyes guilty of CSC I and CSC II, both as first-degree felonies. Reyes timely appealed.

## II. JURISDICTION

[13]    This court has jurisdiction over a criminal appeal from a final judgment of the Superior Court of Guam. 48 U.S.C.A. § 1424-1(a)(2) (Westlaw through Pub. L. 119-36 (2025)); 7 GCA §§ 3107(b), 3108(a) (2005); 8 GCA §§ 130.10, 130.15(a) (2005).

## III. STANDARD OF REVIEW

[14]    "The standard of review for a denial of a motion for a mistrial is abuse of discretion." *People v. Aguon*, 2020 Guam 24 ¶ 12. "An abuse of discretion occurs when the court makes a judgment that clearly goes against the logic and effect of the facts." *People v. Palisoc*, 2002 Guam 9 ¶ 7. Abuse of discretion is discretion "exercised to an end not justified by the evidence." *People v. Gutierrez*, 2005 Guam 19 ¶ 13 (per curiam) (quoting *People v. Tuncap*, 1998 Guam 13 ¶ 12). This court does not "substitute [its] judgment for that of the trial court" but determines whether the decision was "based on an erroneous conclusion of law or whether the record contains no evidence on which the [trial court] could have rationally based the decision." *People v. Patrick*, 2016 Guam 2 ¶ 9 (second alteration in original) (quoting *People v. Perez*, 2004 Guam 4 ¶ 7). "The power to find an abuse of discretion for denial of a motion for a mistrial 'ought to be used with the greatest of caution under urgent circumstances, and for very plain and obvious causes.'" *Aguon*, 2020 Guam 24 ¶ 22 (quoting *United States v. Gann*, 732 F.2d 714, 725 (9th Cir. 1984)).

[15]     If a trial court abused its discretion denying a motion for a mistrial in a criminal case, we review for harmless error.  *Cf. People v. Bosi*, 2022 Guam 15 ¶ 56 ("[A]n evidentiary abuse of discretion does not merit a reversal of convictions if the error is harmless."); *People v. Flores*, 2009 Guam 22 ¶¶ 87, 112 (reviewing for harmless error after finding court abused its discretion denying motion for new trial and to voir dire jury).  If the error is non-constitutional[2] and it is more probable than not that the error did not materially affect the verdict, the error is harmless, and reversal is not required.  *People v. Pugh*, 2018 Guam 14 ¶ 26.  We consider many factors including: "(1) the overall strength of the prosecution's case; (2) the prosecutor's conduct with respect to the improperly admitted evidence; (3) the importance of the wrongly admitted evidence; and (4) whether such evidence was cumulative of properly admitted evidence."  *Bosi*, 2022 Guam 15 ¶ 56 (quoting *People v. Cepeda*, 2021 Guam 9 ¶ 23).  The People bear the burden to prove harmlessness. *Pugh*, 2018 Guam 14 ¶ 29.

[16]     When a defendant moves for a judgment of acquittal based on the insufficiency of the evidence, this court reviews the denial of that motion *de novo*.  *People v. Hosei*, 2023 Guam 22 ¶ 21.  "The People 'must be afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom.'  'This standard is highly deferential to the jury's verdict and not deferential to the trial court's decision . . . .'"  *Id.* (first quoting *People v. Song*, 2012 Guam 21 ¶ 28; and then quoting *People v. Jesus*, 2009 Guam 2 ¶ 19).  The burden lies with the defendant "to establish that the evidence was legally insufficient to sustain a guilty verdict" and overcome a "presumption of guilt."  *See id.* ¶ 46.  The issue is whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact *could* have

---

[2] If the error is constitutional in nature, the proper harmless error standard is "whether it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained."  *People v. Asprer*, 2019 Guam 19 ¶ 21 n.1 (quoting *People v. Torres*, 2014 Guam 8 ¶ 34).

found the essential elements of the crime beyond a reasonable doubt." *Id.* ¶ 47 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

[17]     When a defendant fails to object to prosecutorial misconduct, we review whether the trial court improperly permitted the conduct for plain error. *People v. Reyes*, 2020 Guam 33 ¶ 16 (quoting *People v. Lessard*, 2019 Guam 10 ¶ 7); *People v. Rachulap*, 2022 Guam 9 ¶¶ 41, 45 (reviewing closing argument using facts not in evidence). This court will not reverse for plain error "unless (1) there was an error; (2) the error is clear or obvious under current law; (3) the error affected substantial rights; and (4) reversal is necessary to prevent a miscarriage of justice or to maintain the integrity of the judicial process.'" *Reyes*, 2020 Guam 33 ¶ 16 (quoting *People v. Nathan*, 2018 Guam 13 ¶ 9).

## IV. ANALYSIS

[18]     Reyes seeks reversal of his convictions based on four issues: (1) the trial court's denial of his motion for a mistrial; (2) the trial court's denial of his motion for judgment of acquittal of CSC I based on the sufficiency of the evidence of sexual penetration; (3) the People's leading questions to J.S.; and (4) the People arguing a fact not in evidence during closing arguments.

[19]     We conclude that the trial court abused its discretion when denying his motion for a mistrial; it based its decision on erroneous conclusions of law when it equated indictments with convictions and performed no legal analysis under any relevant evidentiary rules. *See* Tr. at 2 (Jury Trial, Day 3 (Verdict)); RA, tab 45 at 1-3 (Order After Hr'g (Mot. Mistrial)). The trial court took no corrective measures, such as issuing a specific curative jury instruction, to remedy the risk of unfair prejudice resulting from allowing the People to inquire into Reyes's prior arrest and indictment. We further conclude that this error was not harmless and requires vacating Reyes's convictions. Because we reverse on this basis, we decline to reach Reyes's remaining claims

challenging the prosecutor's leading questions to J.S. on direct examination and arguing a fact not in evidence during closing arguments.

[20]     While we vacate Reyes's convictions, we must still consider his challenge to the sufficiency of the evidence. *See People v. Belga*, 2016 Guam 1 ¶ 42 ("Although reversal of Belga's conviction is warranted due to the *Apprendi* error, we must still address Belga's sufficiency of evidence claim." (citing *People v. Anastacio*, 2010 Guam 18 ¶ 16)).  The trial court did not err by denying the motion for judgment of acquittal.  A rational jury could have found beyond a reasonable doubt that Reyes sexually penetrated J.S. based on J.S.'s testimony that Reyes's fingertips passed her labia majora, that he moved his fingers in a circular motion on her vagina, that his fingertips slightly breached her vaginal opening, and that her vagina was in severe pain for up to two days after the incident.  *See Hosei*, 2023 Guam 22 ¶¶ 21, 46-47 (holding that sufficiency of the evidence review examines whether jury had enough evidence to reasonably support its finding of guilt); *People v. Enriquez*, 2014 Guam 11 ¶¶ 15, 19-21 ("The breach of any part of the vagina, including the labia majora, is sufficient to constitute penetration. . . .  The element of penetration may be inferred based on the totality of the evidence. . . .  The hymen and the clitoris are within the outer layers of the vagina, and a touching of these areas would constitute sexual penetration." (citations omitted)); *People v. Mendiola*, 2014 Guam 17 ¶ 18 ("[E]ven the slightest breach of any part of the vagina, including the labia majora, is sufficient.").

[21]     "It is not contradictory to find the evidence sufficient to support a conviction . . . while at the same time reversing the conviction for that charge" on other grounds.  *See Belga*, 2016 Guam 1 ¶ 53.  While the People may have presented evidence that would have been sufficient for a rational jury to convict Reyes of CSC I, the trial court's denial of Reyes's motion for a mistrial

was an abuse of discretion, was not harmless, and requires reversal. We vacate Reyes's convictions and remand for a new trial.

## A. The Trial Court's Denial of Reyes's Motion for a Mistrial Was an Abuse of Discretion

[22]     We review the trial court's denial of the motion for a mistrial for an abuse of discretion. *Aguon*, 2020 Guam 24 ¶ 12. "An abuse of discretion occurs when the court makes a judgment that clearly goes against the logic and effect of the facts." *Palisoc*, 2002 Guam 9 ¶ 7. It is discretion "exercised to an end not justified by the evidence." *Gutierrez*, 2005 Guam 19 ¶ 13 (quoting *Tuncap*, 1998 Guam 13 ¶ 12). "By this standard, we do not substitute our judgment for that of the trial court. 'Rather, we review the trial court's decision to determine whether it was "based on an erroneous conclusion of law or whether the record contains no evidence on which the [trial court] could have rationally based the decision."'" *Patrick*, 2016 Guam 2 ¶ 9 (alteration in original) (quoting *Perez*, 2004 Guam 4 ¶ 7). "The power to find an abuse of discretion for denial of a motion for a mistrial 'ought to be used with the greatest of caution under urgent circumstances, and for very plain and obvious causes.'" *Aguon*, 2020 Guam 24 ¶ 22 (quoting *Gann*, 732 F.2d at 725). This court has stated that "propensity evidence of child molestation does not categorically require granting a mistrial." *Id.* ¶ 31 (noting that Guam Rule of Evidence 413 allows certain propensity evidence in CSC trials and that "[e]ven propensity evidence of prior child molestation is admissible if it passes a Rule 403 balancing test"). Although the trial court is typically best positioned to determine if an incident warrants a mistrial, its decision in this case was an abuse of discretion. *See id.* ¶ 22; *Patrick*, 2016 Guam 2 ¶ 22.

### 1. The trial court's decision was based on erroneous conclusions of law

[23]     Reyes's motion was based on the People's improper cross-examination of Reyes about a prior arrest, indictment, and investigation for alleged crimes against three girls from over twenty years ago. These allegations did not result in a conviction. The trial court allowed the questioning

over Reyes's objection, erroneously concluding the questioning was proper under Guam Rule of Evidence ("GRE") 609, which applies only to prior convictions. *See* RA, tab 45 at 1 (Order After Hr'g (Mot. Mistrial)). The court later overruled Reyes's motion based on its erroneous assumption that arrests/indictments and convictions are "interchangeable." Tr. at 2 (Jury Trial, Day 3 (Verdict)). The trial court's written decision was two-part: (1) the People did not introduce evidence of a conviction and thus GRE 609 did not apply, and (2) even if GRE 609 applied, the questioning would be proper under the rule. RA, tab 45 at 3 (Order After Hr'g (Mot. Mistrial)). The trial court was correct that GRE 609 did not apply. The trial court should have then realized that, as GRE 609 did not apply, its reason for allowing the cross-examination was flawed. The trial court should have then performed additional analysis to determine if permitting the line of questioning was error and taken remedial measures such as issuing a specific jury instruction to cure the error. The trial court did none of these things.

[24] Instead, the trial court performed an analysis assuming GRE 609 applied. Its reasoning consisted of the single case cited by the defense, *State v. Lynch*, 432 S.E.2d 349 (N.C. 1993), and *United States v. Osazuwa*, 564 F.3d 1169 (9th Cir. 2009), both of which dealt with GRE 609's counterpart, Federal Rule of Evidence 609, and, therefore, applied only to prior convictions and provided no relevant legal basis for the trial court's denial of the motion. The trial court examined no evidentiary rule other than GRE 609. The trial court took no corrective measures, such as issuing a specific jury instruction, to remedy the risk of unfair prejudice from this evidence and improper line of questioning. The trial court abused its discretion when it denied Reyes's motion for a mistrial after allowing the People's cross-examination into prejudicial and irrelevant character evidence, performing no analysis under relevant legal precedent or evidentiary rule, such as GRE

403, 404, and 608, and without taking corrective measures to remedy the risk of unfair prejudice to Reyes.

### 2. The record lacks a rational basis for the trial court's decision to deny the motion without taking corrective measures

[25]　In addition, the record contains no evidence on which the trial court could have rationally based its decision.　The People argue that Reyes's counsel opened the door to this line of questioning[3] when Reyes's counsel asked him if he had ever been convicted of a felony or crime of dishonesty with "the clear intent" of establishing that Reyes "never had any interactions in the past with the criminal justice system," Appellee's Br. at 18 (Dec. 20, 2024), and that the cross-examination was "narrowly tailored" to establish that Reyes's testimony on direct was "misleading as to the entirety of his criminal history," *id.* at 20.　While otherwise inadmissible evidence may be introduced if "opposing counsel opens the door for the evidence by creating a misleading impression," we have repeatedly stated that this doctrine has its limits. *People v. Callahan*, 2022 Guam 13 ¶ 41 (quoting *People v. Morales*, 2022 Guam 1 ¶ 58).　If a party creates a false or misleading impression, opposing counsel may introduce otherwise inadmissible evidence to rebut, clarify, or put the misleading evidence into context but may not stray beyond the scope of the open door's invitation. *Id.* (quoting *Morales*, 2022 Guam 1 ¶¶ 58-59).

[26]　Contrary to the People's argument, Reyes's testimony about not being *convicted* of a felony or crime of dishonesty did not create a "misleading" impression about his criminal history that opened the door to prior *arrests*. *See, e.g.*, *McGuire v. State*, 232 S.E.2d 243, 245 (Ga. 1977) (holding that testimony of having no prior convictions does not open door to cross-examination about prior arrests); *United States v. Heckman*, 479 F.2d 726, 730 (3d Cir. 1973) (finding that trial

---

[3] The People also argued that Reyes opened the door to the line of questioning at trial.　*See* Transcript ("Tr.") at 24 (Jury Trial, Day 2, Feb. 15, 2024); Tr. at 17 (Jury Trial, Day 3, Feb. 16, 2024).　However, the trial court did not address this argument in its denial of Reyes's motion for a mistrial.

court did not err by finding testimony opened door to cross-examination into prior convictions, not arrests). Had Reyes testified on direct examination that he had never been arrested, indicted, or accused of any crimes, especially against children, the People might have argued that Reyes opened the door. That is not the case here. On his direct examination, Reyes made no testimony regarding having no prior arrests or facing no prior allegations of crimes against children. Instead, he testified that he had not been convicted of a felony or misdemeanor involving lying, cheating, or stealing. His testimony did not create a misleading picture of his criminal history but an accurate one.

[27] Further, the record lacks analysis under any relevant evidentiary rule, such as GRE 403, 404, or 608. Under the circumstances of this case, we are skeptical that this evidence could have been admissible under these or any other relevant rule.[4] Thus, we cannot find that the record contains evidence on which the trial court could have rationally based the decision.

[28] The trial court's denial of Reyes's motion for a mistrial was based on erroneous conclusions of law, and the record contains no rational basis on which the court could have reached its decision. The trial court allowed the People to cross-examine Reyes about unfairly prejudicial character evidence under an inapplicable rule of evidence and denied Reyes's motion for a mistrial without measures to remedy the resulting prejudice. The trial court abused its discretion.

---

[4] Relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Guam R. Evid. 403. "[E]vidence of certain alleged crimes, especially when compared to the crimes charged, carry the risk of severe prejudice." *People v. Pugh*, 2018 Guam 14 ¶ 23. As we find the evidence contained no impeachment value, there is little, if any, probative value that can be gleaned from the record. Next, evidence of a person's character or of other crimes, wrongs, or acts are generally inadmissible to show action in conformity therewith. Guam R. Evid. 404(a)-(b). There is nothing on the record to suggest that the cross-examination fell under any of GRE 404's stated exceptions. The evidentiary rules allow cross-examination into specific instances of conduct "if probative of truthfulness or untruthfulness" but bars proving the conduct with extrinsic evidence. Guam R. Evid. 608(b). The record contains no information on which the trial court could have found the conduct had any probative value for truthfulness or untruthfulness.

**B.  The Error Was Not Harmless**

[29]    We reverse for an abuse of discretion unless the People demonstrate the error was harmless. *See, e.g.*, *Pugh*, 2018 Guam 14 ¶ 26.  When the People fail to address harmless error in their principal briefing, they waive the argument of harmlessness and fail to meet their burden.  *Id.* ¶¶ 26, 29.  However, had the People raised harmless error, we could not find the error harmless here.

[30]    "A non-constitutional error requires reversal unless it is more probable than not that the error did not materially affect the verdict."  *Id.* ¶ 26 (quoting *Jesus*, 2009 Guam 2 ¶ 54).  We consider numerous factors including: "(1) the overall strength of the prosecution's case; (2) the prosecutor's conduct with respect to the improperly admitted evidence; (3) the importance of the wrongly admitted evidence; and (4) whether such evidence was cumulative of other properly admitted evidence."  *People v. Asprer*, 2019 Guam 19 ¶ 21 (quoting *People v. Roten*, 2012 Guam 3 ¶ 41).  Weighing these factors, we conclude that reversal is necessary.

[31]    First, we examine the overall strength of the prosecution's case.  This factor favors finding harmless error "when the prosecution's case was strong enough to support a conviction even without the erroneously admitted evidence."  *Bosi*, 2022 Guam 15 ¶ 57.  This "court evaluates the sufficiency of properly admitted evidence in the record."  *People v. Tedtaotao*, 2016 Guam 9 ¶ 50.  "[T]he testimony of a sexual assault victim does not need to be corroborated, and a victim's testimony alone can support a criminal sexual conduct conviction."  *Bosi*, 2022 Guam 15 ¶ 57 (alteration in original) (quoting *People v. Perez*, 2015 Guam 10 ¶ 36); *see also People v. Manila*, 2015 Guam 40 ¶ 43.  However, the victim's testimony alone "is generally not, in and of itself, *overwhelming* evidence of guilt."  *Asprer*, 2019 Guam 19 ¶ 22.

[32]    Reyes did not challenge the sufficiency of the evidence of CSC II at trial or on appeal. Compared to the element of "sexual penetration" underlying Reyes's CSC I conviction, his CSC

II conviction required the People to prove "sexual contact." "'Sexual Contact' includes the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification." 9 GCA § 25.10(a)(9) (as amended by Guam Pub. L. 36-101:2 (June 15, 2022)). Based on J.S.'s definitive testimony of Reyes's fingers touching her vagina, the prosecution's case was "strong enough to support a conviction even without the erroneously admitted evidence." *Bosi*, 2022 Guam 15 ¶ 57. Thus, the strength of the prosecution's case of CSC II weighs in favor of harmlessness for this conviction.

[33]     The prosecution's case for CSC I was not strong. Whether the People established that Reyes penetrated J.S. was a highly contentious issue at trial and on appeal. J.S. repeatedly testified that Reyes did not "go inside" or "enter" her vagina. Tr. at 60, 84 (Jury Trial, Day 1). While her testimony provides *sufficient* evidence to sustain the conviction, these facts negatively impact the overall strength of the People's case such that this factor weighs against finding harmless error here. *See Asprer*, 2019 Guam 19 ¶¶ 5-7, 22 (finding "prosecution's case was not strong overall" and "[p]roperly admitted evidence of . . . guilt was not overwhelming regarding his CSC charges").

[34]     Second, the prosecutor's conduct regarding the improperly admitted evidence weighs against finding the error harmless. This factor "involves whether such evidence was repeatedly referenced or emphasized and whether the prosecutor used the evidence in urging a guilty verdict in summation." *Tedtaotao*, 2016 Guam 9 ¶ 51. Here, the prosecutor extensively cross-examined the defendant on the prior arrest. She further brought an indictment up to him on the witness stand to impeach his testimony and introduce the jury to its existence, without admitting it into evidence. She later used the indictment and prior allegations to attack the defendant's credibility during

closing arguments. The credibility of the defendant and J.S. were key considerations in determining guilt. The prosecutor repeatedly referenced and emphasized the improper evidence, including using part of her closing argument to attack the defendant's credibility. Thus, this factor weighs against finding harmless error.

[35]     Third, the importance of the wrongly admitted evidence weighs against finding the error harmless. This factor weighs in favor of harmlessness if this court determines the evidence was likely not significant to the jury's verdict. *See Bosi*, 2022 Guam 15 ¶ 59. When this court is confident that the jury convicted a defendant based on properly admitted evidence and not the improperly admitted evidence, this factor weighs in favor of finding the error harmless. *Id.* We previously found this factor weighed against harmless error when impeaching the witness was unnecessary. *See Asprer*, 2019 Guam 19 ¶ 22 ("The improper evidence regarding Asprer's alleged relationship with Ibanez and Nauta was also not important because there was no need to impeach witnesses who had yet to testify."). Here, the prior arrest and indictment were for alleged crimes against three young girls from over twenty years ago. The only offered probative value or relevance for this evidence on the record was for impeachment or to correct a misleading impression. Yet, we conclude the evidence had no impeachment value or ability to correct a misrepresentation because Reyes truthfully testified that he had no prior convictions. This factor weighs against finding the error harmless.

[36]     Lastly, whether such evidence was cumulative of properly admitted evidence weighs against finding the error was harmless. If the evidence was cumulative of properly admitted evidence, this factor weighs in favor of finding the error harmless. *See Bosi*, 2022 Guam 15 ¶ 59 ("The fourth prong of the harmless error analysis supports harmless error because the emails are

cumulative of ample testimony."). Here, the evidence was not cumulative. This factor weighs against finding harmlessness.

[37] For Reyes's CSC I conviction, all four factors weigh against finding the error harmless. For CSC II, three out of the four factors weigh against finding the error harmless. We cannot conclude that it is more probable than not that the improperly admitted evidence did not materially affect the verdict. Thus, we find the error was not harmless here.

### C. The Trial Court Did Not Err by Denying Reyes's Motion for a Judgment of Acquittal of CSC I Based on Insufficiency of the Evidence of Sexual Penetration

[38] While we reverse based on the trial court's denial of Reyes's motion for a mistrial, we must still address Reyes's sufficiency of the evidence claim because a finding of insufficiency would result in a more favorable outcome to the defendant: an acquittal. *Belga*, 2016 Guam 1 ¶ 42 ("[E]ven if a defendant's conviction can be vacated on other grounds, if the defendant also raises sufficiency of the evidence as one ground, the court must consider this argument because a finding of insufficiency would result in acquittal rather than a less favorable outcome to the defendant, such as vacating the conviction and exposing him to possible retrial." (alteration in original) (quoting *Anastacio*, 2010 Guam 18 ¶ 16)).

[39] Reyes raised the insufficiency of the evidence by a motion for judgment of acquittal for CSC I, so we review the trial court's decision *de novo*. *Hosei*, 2023 Guam 22 ¶ 45. "The defendant bears the burden to establish that the evidence was legally insufficient to sustain a guilty verdict" and overcome a presumption of guilt. *Id.* ¶ 46 (citations omitted). Our review is "highly deferential to the jury's verdict and not deferential to the trial court's decision to deny the motion." *Id.* ¶ 45 (quoting *Jesus*, 2009 Guam 2 ¶ 19). We give "full play" to the jury's duty to fairly resolve conflicting testimony, weigh evidence, and draw reasonable inferences from basic to ultimate facts. *Id.* ¶ 46 (quoting *People v. Pinaula*, 2023 Guam 2 ¶ 60). This court does not determine whether

"*it* believes that the evidence at trial established guilt beyond a reasonable doubt" but rather whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact *could* have found the essential elements of the crime beyond a reasonable doubt." *Id.* ¶ 47 (quoting *Jesus*, 2009 Guam 2 ¶ 59). "This court is concerned solely 'with the existence or nonexistence of evidence, not its weight,'" *id.* (quoting *People v. Kotto*, 2020 Guam 4 ¶ 29), and considers "whether there is enough direct or circumstantial evidence presented so reasonable inferences may be drawn," *id.* (citing *Jesus*, 2009 Guam 2 ¶ 62).

[40]     "Sexual penetration" is "sexual intercourse, cunnilingus, fellatio, anal intercourse, *or any other intrusion, however slight, of any part of a person's body* or of any object into the genital or anal openings of another person's body, but emission of semen is not required." 9 GCA § 25.10(a)(10) (emphasis added). "The breach of any part of the vagina, including the labia majora, is sufficient to constitute penetration." *Enriquez*, 2014 Guam 11 ¶ 15; *see also Mendiola*, 2014 Guam 17 ¶ 18. "The hymen and the clitoris are within the outer layers of the vagina, and a touching of these areas would constitute sexual penetration." *Enriquez*, 2014 Guam 11 ¶ 21. "While evidence of sexual penetration must be present, there are no magic words that need to be stated at trial. The element of penetration may be inferred based on the totality of evidence." *Id.* ¶ 19. Additionally, "sexual penetration may be inferred when the victim experiences pain as a result of the sexual touching." *Id.* ¶ 20. The People need not present direct evidence of penetration; they may establish the element through circumstantial evidence alone. *Mendiola*, 2014 Guam 17 ¶ 21 ("Thus, the element of penetration can be established by circumstantial evidence.").

[41]     Reyes makes a compelling point that J.S. testified more than once that Reyes did not "go inside" or penetrate her, that he rubbed her vagina in a circular motion, and "whether she felt pressure inside was not the same thing as to whether she felt his fingers inside." Appellant's Br.

at 11 (Oct. 21, 2024). Yet, this court is not tasked with determining whether it has any reasonable doubt. Rather, we ask whether any rational jury could have found Reyes guilty beyond a reasonable doubt. *Hosei*, 2023 Guam 22 ¶ 47. It is the responsibility of the jury, not a reviewing court, to weigh evidence and resolve conflicts in testimony. *Id.* ¶ 46. The standard of review bars reviewing courts from "engag[ing] in 'fine-grained factual parsing'" and "unduly imping[ing] on the jury's role as factfinder." *People v. Riosen*, 2023 Guam 23 ¶ 30 (quoting *Coleman v. Johnson*, 566 U.S. 650, 655 (2012) (per curiam)). This court must presume that the jury resolved any "conflicts in favor of the prosecution, and must defer to that resolution." *Id.* (quoting *United States v. Nevils*, 598 F.3d 1158, 1164 (9th Cir. 2010)).

[42] A rational jury could have found that the legal definition of sexual penetration was satisfied in this case. They could have found that J.S.'s testimony established that the tips of Reyes's fingers intruded into her body or into her genital opening, even just slightly, when he tried to enter his fingers into J.S.'s vaginal opening. The jury could have also reasonably inferred that Reyes was touching her clitoris from J.S.'s testimony that his fingers passed her labia majora and that he moved his fingers in a circular motion on her vagina. This is sufficient evidence of sexual penetration. We conclude that the trial court did not err when it denied Reyes's motion for judgment of acquittal of CSC I.

## D. We Decline to Reach Reyes's Remaining Claims of Prosecutorial Misconduct

[43] Reyes argues that the trial court erroneously allowed the People to (1) ask J.S. leading questions on direct and re-direct examination that "coached" and "twisted" her testimony and (2) repeatedly argue that J.S. experienced "burning" in her vagina, a fact not in evidence, during closing arguments. We decline to address these issues because we vacate the judgment on other grounds.

## V. CONCLUSION

**[44]** The trial court abused its discretion when it denied Reyes's motion for a mistrial after allowing an extensive cross-examination into highly prejudicial character evidence and without taking action to remedy the resulting prejudice. Over Reyes's objection, the trial court allowed the People to cross-examine him about a decades-old arrest and indictment for alleged crimes against girls. The court allowed the questioning based on GRE 609, which applies only to convictions. Convictions and indictments are not interchangeable. The court's decision denying Reyes's motion for a mistrial failed to examine any relevant evidentiary rule, namely, GRE 403, 404, and 608. Additionally, the record lacks any rational basis for the trial court's decision. We further conclude the error was not harmless. We **VACATE** the judgment and **REMAND** for a new trial.


/s/
F. PHILIP CARBULLIDO
Associate Justice

/s/
KATHERINE A. MARAMAN
Associate Justice


/s/
ROBERT J. TORRES
Chief Justice